## BAUM v. TRANTHAM.

1. APPLICATION OF PAYMENTS.—A debtor may direct his payment to be applied to any claim held against him by the creditor to whom the payment is made, provided the application be directed at the time of payment. If the debtor then fails to direct, the creditor, at any time before judgment, may make the application to any claim that he holds against such debtor.

2. IBID.—MUTUAL MISTAKE.—A creditor held three claims against the same debtor, one secured by mortgage of land, one secured by mortgage of mules, and one unsecured. The debtor turned over the mules to the creditor, and agreed that the creditor should take them at a price that both parties then believed was less than the balance due on the chattel mortgage, the proceeds to enure to the debtor's benefit, but no other direction being given as to the application of the proceeds. Five days afterwards the debtor ascertained from papers found by him that the chattel mortgage was overpaid, and at once directed the surplus to be applied to the land mortgage. *Held*, that the creditor had the right to apply this surplus to the unsecured debt.

3. IBID.—CHATTEL MORTGAGE.—The stipulation in the mortgage, that the net proceeds of any sale made thereunder should be applied to the mortgage debt and the overplus returned to the mortgagor, was not an application of the overplus; and the mortgagee had the right to apply it to any other demand held by him against the mortgagor.

4. IBID.—The creditor did not accept the debtor's direction as to the application by asking for a statement, so that it might be entered on the creditor's books, if found correct, its correctness being denied when furnished.

Before HUDSON, J., Kershaw, September, 1893.

Action by Baum Bros. against W. D. Trantham. The plaintiffs became the assignees of the several claims mentioned in the opinion on April 30, 1890, and commenced this action to foreclose their mortgage of the town lots in January, 1893. The Circuit decree, omitting its statement, was as follows:

Unquestionably the general rule is that the debtor may direct the application of payments at the time they are made. If he does not then avail himself of his right, it becomes the privilege of the creditor to make such appropriation as he chooses at any time before judgment. But this case does not come within the general rule—it is clearly an exception. The mortgage of the mules provided, "in case default shall be made in the payment of said account, or any part thereof, it shall and may be lawful for the said Baum Bros. & Stein, their agents and attorneys, to enter into any or all of the messuages, lands, and tenements of the said W. D. Trantham, and to seize said property, and the same to sell after due notice according to law, and to apply the net proceeds of such sale to the payment of said debt, returning the overplus, if any, to the said W. D. Trantham, his executors, administrators or assigns." That was the contract between the parties, and the direction it contains as to the application of the proceeds of the sale of the mules has not been changed. The paper given by the defendant to the plaintiffs at the time the mules were surrendered to them, was merely his consent in writing, as provided by the statute, for the property to be sold without advertising, and for the proceeds to be so applied as to "enure to his benefit." This in nowise changed, but in effect reiterated, the direction contained in the mortgage, except in regard to notice. Any surplus remaining after satisfying the mortgage debt belonged to the defendant. It is not contended by him that he could require the plaintiffs to pay the same to him, but that he had the right to direct, as soon as it was ascertained, whether upon private sale, or upon seizure, advertisement, and public sale of the property, that there was a surplus, how it should be applied. He undoubtedly had this right.

It is contended by the plaintiffs that the defendant should have given directions as to any surplus when the mules were turned over. To this it may be said that he was not required to do so, because direction had already been given in the mortgage. Besides, both the plaintiffs and the defendant were laboring under the mutual mistake that the sum of $315 was insufficient to pay the debt upon the mules, and when informed by the defendant, as soon as the error was discovered, that the mortgage debt had been overpaid, and directed by him to credit the surplus upon the notes secured by the mortgage of his town lots, they in effect consented to do so, provided he would send them a statement of the matter, and they found the same correct—which statement was furnished the plaintiffs by the defendant, and it has been shown to be practically correct; the special referee having, in fact, found the surplus to be greater than the defendant claimed it to be.

After hearing argument of counsel, and upon a review of the whole case, it is ordered and adjudged, that the report of the special referee be overruled in so far as it holds that the defendant did not have the right to direct the application contended for by him of so much of the proceeds of the sale of the four mules as remained after paying the mortgage debt thereon, and that said report be and is hereby in all other respects confirmed.

This decree further directed foreclosure and sale. Plaintiffs appealed.

*Mr. J. D. Kennedy,* for appellants.

*Mr. W. D. Trantham,* contra.

July 27, 1894. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. The facts of this case seem to be conceded, and the only controversy is as to the legal rights of the parties under the facts. On the 18th July, 1888, the defendant executed a mortgage on two town lots to one H. Baum, to secure the payment of two notes, aggregating the sum of one hundred and seventy-five dollars, which notes, together with the mortgage, were duly assigned to the plaintiffs herein.

On the 15th of March, 1889, the defendant gave to Baum Bros. & Stein a mortgage on five mules and certain other personal property, to secure the payment of advances to the amount of five hundred dollars, payable 1st of October, 1889; and on the 16th of March, 1889, the defendant, by an endorsement thereon, agreed that the lien of said mortgage should be so extended as to cover a balance due on account for 1888, amounting to $363.77, which should likewise be due and payable on the 1st of October, 1889. This mortgage was also assigned to the plaintiffs herein. On the 4th of January, 1893, defendant delivered to plaintiffs four of the mules covered by the mortgage of personalty, and gave plaintiffs a paper of which the following is a copy: "I hereby waive the advertisement of mules under mortgage to Baum Bros., and consent to their being sold by them at private sale, the proceeds of said sale to enure to my benefit." On the next day, to wit: 5th of January, 1893, by agreement of the parties, the mules were appraised at the sum of $315, and the plaintiffs agreed to take them at that price; and on the same day plaintiffs made the following entry on their journal: "Camden, So. Ca., January, 1893. Merchandize, 5th, $315. W. D. Trantham, contingent fund, $315, for four mules, which has been credited on 1889 mortgage, the same having been appraised by S. B. Latham," and also endorsed on the mortgage of the mules a credit of $315.

At this time, both the plaintiffs and defendant were under the impression that more than $315 remained due on that mortgage; and between the 5th and the 9th of January, 1893, the plaintiffs made several demands upon the defendant for the balance, $41.62, claimed to be still due on the mortgage. On the night of the 8th of January, 1893, the defendant discovered from certain memoranda in his possession, which had previously been mislaid, that the proceeds of the sale of the mules had been more than sufficient to pay the real balance due on the mortgage, and on the next morning, the 9th, addressed to plaintiffs a note, informing them of the fact, and directing them to credit the surplus proceeds of the sale of the mules upon the mortgage of the town lots. To this note the plaintiffs replied as follows: "Will you please send us a statement

showing how you arrived at the figures named in your letter, so we may so enter upon our books, if we find the same correct." The statement was sent, and the plaintiffs declined to credit the surplus proceeds of the sale of the mules upon the mortgage of the town lots. On the 11th of January, plaintiffs wrote defendant, saying: "We beg to say that we do not agree with you in your statement as to how the matter stands;" to which defendant replied on the next day, saying that he adhered to his position assumed in his note of the 9th, and demanding that the surplus proceeds of the sale of the mules be credited on the mortgage of the town lots. It also appears that at the time of this transaction, defendant, in addition to the debts due on the two mortgages, was indebted to plaintiffs on other unsecured claims, the amount of which is not stated—which, however, is not material to the solution of the legal question presented.

The only question presented in this action, brought to foreclose the mortgage of the town lots, is whether the defendant is entitled to require the plaintiffs to credit the surplus proceeds of the sale of the mules upon the debt secured by the mortgage of the town lots, or whether the plaintiffs have the right to apply such surplus to the unsecured claims held by them against the defendant. There is, and can be, no dispute as to the rule that where a debtor owes several claims to his creditor, he has the right, *when he makes a payment,* to direct the application of such payment to such claim as he may choose; but if he fails to give such direction at that time, then the creditor may, at any time before judgment, apply such payment to such claim as he may see fit. The reason of the rule is that, up to the time of payment of the money, or the delivery of the property agreed to be taken as a substitute for money, such money or property, as the case may be, belongs to the debtor, and he may, therefore, direct its application; but so soon as the money or property passes from the debtor to the creditor, without direction as to its application, it becomes the money or the property of the creditor, and he may, therefore, apply it to whichever debt he chooses. So that this case must turn upon the inquiry, when was the

payment of $315 made by the defendant to the plaintiffs; and whether the defendant did, *at the time*, give any directions as to its application.

It seems to us clear that this payment must be regarded as having been made on the 5th day of January, 1893, so soon as it was agreed between the parties that the plaintiffs should take the mules at the appraised price; for that was, practically, the same thing as if the defendant had on that day sold the mules, by consent of plaintiffs, to some third person for that sum of money, and turned over the same to the plaintiffs; and in that event there could be no doubt that the payment must be regarded as made on that day; and as there is no pretense that the defendant, *on that day*, gave any direction as to the application, he lost his right to do so afterwards. The fact that both parties were under the erroneous impression that it would require the whole of the sum then paid to extinguish the debt secured by the mortgage of the mules, to which both parties then understood that the money was to be applied, cannot affect the question; for the further fact would still remain, that no direction was then given as to the application of the surplus, if any there should be. If, as indicated in *Bell* v. *Bell*, 20 S. C., 34, and in *Frost* v. *Weathersbee*, 23 *Id.*, page 368-9, the proper time to direct the application of the surplus of the proceeds of sale of personal property, delivered or consigned to the mortgagee or other lienee, for sale, is when such property is delivered or consigned to the mortgagee or other lienee, as would seem to be reasonable, inasmuch as the property then passes from under the control of the mortgagor or other lienor, then it is clear that the defendant did not then give any specific directions as to the application of the surplus proceeds of the sale of the mules; for in the paper given to plaintiffs, when the mules were delivered to them, a copy of which is set out above, no such directions were given, for in that paper the defendant simply waived the necessity for an advertisement, and consented that the mules should be sold at private sale, "the proceeds of said sale to enure to my benefit," and when the mules were sold, and the proceeds of sale were applied first to extinguish the balance due on the mortgage

debt, as the law required, and the surplus of such proceeds were applied to the unsecured claims held by plaintiffs against the defendant, such proceeds did enure to the benefit of defendant.

Nor can the fact that the mortgage on the mules contained the provision, usually found in such papers, that upon default in payment of the mortgage debt the mortgagees might seize and sell the mortgaged property, "and apply the net proceeds of such sale to the payment of said debt, returning the overplus, if any, to the said W. D. Trantham," affect the question. Such a provision can, in no proper sense, be regarded as a direction by the mortgagor to apply any surplus of the proceeds of the sale to any particular debt. It is nothing more than an express declaration of what the law would necessarily imply without such declaration, to wit: that the mortgagee, upon breach of the condition of the mortgage, becomes the *legal* owner of the mortgaged property, and as such may seize and sell the same in satisfaction of the mortgage debt, subject, however, to an equity, upon the part of the mortgagor to require an accounting from the mortgagee for the proceeds of the sale, but in such accounting the mortgagee is entitled to credit for any unsecured claims which he may hold against the mortgagor. *Reese* v. *Lyon,* 20 S. C., 17; *McClendon* v. *Wells,* 20 *Id.,* 514.

Again, it is urged that plaintiffs, by their first letter, consented to credit the surplus upon the mortgage of the town lots, if the statement furnished by the defendant should be found correct. But that letter cannot be so construed. It certainly does not say so, and its terms imply exactly the contrary; for the credit was to be entered "*upon our books,*" where, doubtless, the unsecured account appeared, and *not* upon the mortgage of the town lots. Besides, the plaintiffs, in their letter of the 11th of January, expressly declined to accept the correctness of defendant's statement.

It seems to us, therefore, that, in any view of the case, the defendant having failed to exercise his right to direct the application of any surplus of the proceeds of the sale of the mortgaged property, which might remain after satisfying the mortgage debt, either at the time of the delivery of

the property to the mortgagees, or at the time of the sale thereof, he lost his right to give such direction, and his attempt to do so four or five days afterwards, cannot avail him, and we think the Circuit Judge erred in holding otherwise.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced.